IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY PENA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:18-CV-172-M-BR |
| | § | |
| DIRECTOR, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS
## BY A PERSON IN STATE CUSTODY

Before this Court is Michael Anthony Pena's ("Petitioner's") Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his 2015 state court conviction and resultant 60-year sentence out of the 222nd District Court of Deaf Smith County, Texas. (ECF 3[1] at 2[2]). For the reasons stated herein, the undersigned United States Magistrate Judge recommends Petitioner's application for federal habeas corpus relief under Section 2254 of Title 28 of the United States Code be DENIED.

## I.    PROCEDURAL HISTORY

On April 30, 2014 Petitioner was charged by grand jury indictment in Deaf Smith County, Texas, in Cause No. CR-14D-047, with the first-degree felony offense of possession of a controlled substance with intent to deliver, namely methamphetamine, in an amount of at least four grams but less than 200 grams, enhanced by a prior felony conviction, in violation of Texas Health and Safety

---

[1] The "ECF __" reference is to the number of the item on the docket in this civil action.

[2] The reference is to the page identification number ("PageID") reflected at the top right corner of the document.

Code § 481.112(d). (*See* ECF 12-3 at 6). After Petitioner entered a plea of not guilty, a jury trial proceeded in the 222nd District Court on May 18, 2015 to May 20, 2018. (ECF 12-4 at 3-6). The jury found Petitioner guilty of the offense charged in the indictment. (ECF 12-7 at 168). Petitioner pleaded true to the enhancement paragraph during the sentencing phase of trial. (ECF 12-8 at 9). The jury assessed punishment at 60 years of incarceration. (*Id.* at 32). Judgment was entered in accordance with the jury's verdict by the state trial judge. (ECF 12-3 at 66-67).

Petitioner filed a direct appeal of his conviction and sentence. (*Id.* at 72). In a written opinion, the Seventh District Court of Appeals of Amarillo, Texas affirmed Petitioner's judgment. *Pena v. State*, No. 07-15-00236-CR, 2017 WL 1908584 (Tex. App.—Amarillo May 4, 2017, *pet. ref'd*); (ECF 12-12; ECF 12-17 at 1; ECF 12-18 at 1). The Texas Court of Criminal Appeals ("TCCA") refused Petitioner's petition for discretionary review. *Pena v. State*, No. PD-0565-17 (Tex. Crim. App. Sept. 20, 2017); (ECF 12-14 at 1).

Petitioner then challenged his conviction through a state application for writ of habeas corpus, filed on March 8, 2018. (ECF 12-20 at 1-47). On April 11, 2018, the TCCA denied his application without written order on the findings of the trial court without a hearing. (ECF 12-19 at 1). Petitioner filed the instant federal application on September 17, 2018. (ECF 3, at 1).

## II.    <u>FACTUAL HISTORY</u>

The Seventh Court of Appeals ("COA") in Amarillo summarized the facts of this case in its May 4, 2017 Memorandum Opinion affirming the judgment and sentence of the trial court; additionally, the Respondent's Answer includes the summary of a section of the facts from this opinion. (ECF 12-12 at 5-7; ECF 13 at 16-17). The Court adopts this summation without need to include it herein. As Petitioner could not challenge the effectiveness of trial counsel during direct appeal, the appellate court opinion does not address all the facts relevant to Petitioner's current claims. (*See id.*).

Relevant to the Court's analysis of Petitioner's claims raised in his state court habeas application are the trial court admissions and statements that relate to the testimony concerning the weight of the drugs and the testimony of Officer Bravo. Officer Bravo was the witness who provided the only direct evidence of Petitioner's possession of the methamphetamine. Officer Bravo testified he observed Petitioner throw two objects from his pocket onto the ground during a foot chase, as follows:

> Q.   And what, if anything, did you observe the Defendant do prior to apprehending him?
>
> A.   As I was chasing him, he began to trip and fall, and I observed his right hand in his right pocket.  As he was falling to the ground, he was able to remove his right hand, at which time I observed him throw two objects, what [sic] were later located and found to be a methamphetamine pipe and also narcotics.
>
> Q.   And did you take custody of both of those items eventually?
>
> A.   Yes.

(ECF 12-7 at 46). Petitioner asserts that he had previous interactions with Officer Bravo and that this testimony was fabricated based on Officer Bravo's bias and animus toward Petitioner, and that his attorney failed to suppress the evidence or object to this testimony on those, or any other, grounds. (ECF 3 at 8; ECF 4 at 7-10).

During trial, testimony was elicited concerning the weight of the drugs recovered from the ground on the day of the incident. First, Officer Bravo testified that he weighed the drugs on a police scale when booking the Petitioner, the day of the incident, as follows:

> Q.   And then once you had examined them -- did you weigh them at this time?
>
> A.   I believe I weighed them prior to booking Mr. Pena into the jail.
>
> …
>
> Q.   And what is the figure as to [the] amount in your report?
>
> A.   The scale I used showed an approximate amount of **about three grams**.

Q.   What kind of scales do you use?

A.   The scale I used that day was just a small scale that I had in my patrol car.  It was not certified.  It was just a scale that I use just to get a ballpark figure so I can know what to book in the suspect on.

Q.   Have you used it on prior occasions?

A.   I'm sure I had.

Q.   Is there usually much of a discrepancy between your weight and the lab reports?

A.   Yes, there is.

(ECF 12-7 at 72-73). The Department of Public Safety ("DPS") lab technician, Mrs. Robison, testified that she weighed the controlled substance and offered testimony concerning the lab report of her findings, as follows:

Q.   So based on what you discovered inside there, did you discover nine individually-packaged small little wrappers of a crystal white substance?

A.   There were nine tied corner baggies, each containing a crystalline substance.

Q.   Out of those nine individually-packaged containers, how many did you test?

A.   I analyzed four of those.
…

A.    The four baggies are considered individual items, so I obtained an individual weight for each of the four baggies, I performed preliminary testing on each of the four baggies and also a confirmatory instrumental analysis on each of the four baggies.

Q.   And what was the weight of the four items that you tested?

A.   4.57 grams net weight.
…

Q.    Mrs. Robison, did you also weigh the entire exhibits that were sent to you, the drug exhibits?

A.   I have a weight of the unanalyzed portion.

Q.   Yes, ma'am.  And what was that weight?

A.   2.57 grams, and that's a gross weight.

(ECF 12-7 at 95-100). Thus, the DPS technician's testimony was that four of the nine bags, those that were specifically tested and found to contain methamphetamine, weighed 4.57 grams of *net* weight, and the additional untested five baggies weighed 2.57 grams of *gross* weight. (*See id.*).

The state trial court made findings of fact and conclusions of law, relied upon by the TCCA, in its denial of Petitioner's state habeas application. Particularly relevant to this Court's analysis of procedural default are the claims raised by Petitioner and the TCCA's determination of cognizability of Petitioner's sufficiency claims, and the trial court's findings on Petitioner's IAC claims and any potential bias of Officer Bravo, as follows:

### Findings of Fact

1. On January 3, 2018, applicant filed his first application for a writ of habeas corpus under article 11.07 of the Texas Code of Criminal Procedure, asserting the following four grounds for relief: (1) "factual sufficiency of the evidence to support conviction," (2) "legal sufficiency of the evidence to support the intent to deliver," (3) "ineffectiveness of trial counsel for failure to file a Motion to Suppress evidence, due to 2.0 gram discrepancy," and (4) "ineffectiveness of trial counsel for failure to file a Motion to Suppress or object to officer Juan Bravo's testimony."
…

4. There is no evidence, and no specific facts, that officer Juan Bravo (Bravo) was either biased or prejudiced against applicant or that Bravo did anything improper in connection to applicant's arrest for the indicted offense. There is no evidence that the controlled substance, which was the subject matter of this cause, was tampered with or illegally seized.
…

6. On direct appeal, in a single issue, applicant asserted that the evidence that he possessed methamphetamine was legally insufficient to support his conviction because the State failed to establish any affirmative links between him and the methamphetamine found on the ground when he was apprehended. *See Pena v. State*, 2017 Tex. App. LEXIS 4120 *1 (Tex. App.—Amarillo, May 4, 2017, *pet. ref'd*) (mem. opinion not designated for publication).

7. The Pena court found that a rational trier of fact could have found sufficient links between applicant and the methamphetamine found at the time of his apprehension to support the conviction. 2017 Tex. App. LEXIS 4120 *7.

8. Applicant has provided no proof in support of his grounds other than his sworn statements.

*Conclusions of Law*

1. There are no material previously unresolved issues of fact that are material to the legality of applicant's conviction and sentence. An evidentiary hearing is not necessary because there is ample evidence—including the Reporter's Record, the appellate court findings, and the affidavit of Lesly—for the Court to rule on the relief sought by applicant.

2. Applicant has failed to prove by a preponderance of the evidence that any alleged error contributed to his conviction or punishment.

3. Applicant has failed to prove that but for trial counsel's alleged deficient performance the result of the trial would have been different.

4. Applicant's sworn allegations alone are insufficient to prove his claims.

5. Lesly exercised reasonable trial strategy, and he exercised his professional judgment in an effective manner.

6. Applicant has failed to prove with a sufficient record that his trial counsel's representation fell below an objective standard of reasonableness.

7. Applicant received effective assistance of counsel.

8. Applicant's challenge to the sufficiency of the evidence, grounds one and two, are not cognizable. *See Ex parte Easter*, 615 S.W.2d719, 721 (Tex. Crim. App. 1981). Moreover, applicant's allegation that was rejected on direct appeal, ground two, is not cognizable now on habeas corpus. *Ex parte Acosta*, 672 S.W.2d 470, 472 (Tex. Crim. App 1984).

…

(ECF 12-20 at 39-42).

Additionally, the trial court's findings of fact and conclusions of law referenced trial counsel

Lesly's affidavit, which provided his explanation of his actions during trial:

Pena claims that I was ineffective because I did not file a motion to suppress the methamphetamine based on the unofficial weight of the controlled substance recorded by the Hereford Police Department being approximately 3 grams compared to the Texas Department of Public Safety (DPS) Crime Lab weight of 4.57 grams. From my experience, I know that the weight shown by the police is frequently inaccurate. And the weight provided by the DPS lab was within the range charged in the indictment. In reviewing the report and talking with Pena, I did not discover any discrepancies in the factual basis for either the stop or seizure of my client or the methamphetamine that he attempted to discard. The police photographed the baggies of methamphetamine. These photos were consistent with the evidence that was offered

by the State at trial. I also did not discover any chain-of-custody issue that would create a legal basis for suppressing the evidence. The first link of the chain was police officer Juan Bravo (Bravo) and the last link was the DPS chemist, Marjorie Robison, both of which testified at trial. I believe that by filing a frivolous motion to suppress, I would lose credibility with the trial court and that [would] not benefit my client. I decided that the better trial strategy would be to question Bravo about the event. During cross examination, I questioned Bravo about the presence of other witnesses who he had failed to question. I also questioned him about not trying to get fingerprints from the baggies of methamphetamine or DNA from the methamphetamine pipe. I also questioned Bravo about the discrepancy in the weight from his testing and the labs. He admitted on the stand that his scale was not certified and had been wrong in the past. Based on all these issues, I thought that a jury might decide that the evidence fell short of beyond a reasonable doubt.

Pena also claims that based on his prior contact with Bravo, I should have filed a motion to suppress because Bravo was 'prejudiced and bias' (sic) against Pena. Pena was riding in the passenger seat of the vehicle that fled from the police. When the vehicle stopped, Pena fled from the vehicle on foot. There simply was no factual support from my client or from my investigation that showed Bravo targeted the driver of a vehicle that my client happened to be a passenger. I believed it was a better strategy to argue that the recovered controlled substance was not knowingly in his possession. By admitting the marijuana was in his pocket, I hoped that he had gained enough credibility with the jury that they would believe him when he testified that the methamphetamine was not his. I counseled Pena that he had a right not to testify; however, he decided to testify even though I had recommended that he not. He testified that the methamphetamine was not his and that his fingerprints and DNA would not be present on any of the evidence. I did not believe that arguing Bravo had a vendetta against my client would have been sound strategy based on the facts of this case.

(ECF 12-20 at 31-33).

## III.    PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United

States for the following reasons:

Petitioner challenges the factual sufficiency of the evidence to support his conviction. (ECF 3 at 7). Petitioner claims Officer Bravo's testimony alone is insufficient to support he possessed the methamphetamine as alleged in the indictment. (*See id.*).

Petitioner challenges the legal sufficiency of the evidence to support his conviction. (*Id.*). Petitioner argues that his "intent" to deliver is only supported by the packaging of the drugs and the weight of drugs found – all consistent with personal use. (*Id.*).

Petitioner received ineffective assistance of counsel ("IAC") in violation of the Sixth Amendment through trial counsel's deficient performance: failure to conduct adequate discovery and file pretrial motions, failure to file a motion to suppress, failure to

challenge the discrepancy regarding the weight of the methamphetamine (difference in weight at the scene of the crime and the weight at the laboratory), failure to request and obtain independent testing of the controlled substance, failure to adequately investigate and interview exculpatory witnesses, failure to challenge the intent prong of the offense, failure to object to the testimony of Officer Bravo (that he saw Petitioner throw two objects on the ground), Officer Garza, and Officer Parkhurst. (*Id.* at 8, ECF 4 at 4, 7-10).

## IV.    RESPONSIVE PLEADINGS

On January 18, 2019 the Respondent filed an Answer and Brief in Support to the Petitioner's application. (ECF 13). Respondent argues that several of Petitioner's IAC claims and his sufficiency of the evidence challenge to the weight of the drugs are procedurally defaulted under the Antiterrorism and Effective Death Penalty Act ("AEDPA") framework. (*Id.* at 7-11). Petitioner's exhausted sufficiency of the evidence challenge – regarding proof of Petitioner's "possession" and "intent" – fail to show the COA Memorandum Opinion was an unreasonable application of the law or facts. (*Id.* at 14-19). Additionally, Respondent asserts that Petitioner's two exhausted IAC claims fail to meet the *Strickland* standard. (*Id.* at 19-26).

Petitioner filed no Reply to Respondent's Answer.

## V.    STANDARD OF REVIEW AND RULE 5 STATEMENT

### A.    Section 2254

A writ of habeas corpus on behalf of a person in custody under a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the petitioner shows that the prior adjudication:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or

if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407–09; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244–46 (5th Cir. 2002)(*en banc per curiam*)(focus should be on the ultimate legal conclusion reached by the state court and not on whether that court considered and discussed every angle of the evidence). A determination of a factual issue made by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). Absent express findings, a federal court may imply fact findings consistent with the state court's disposition. *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983). Thus, when the Texas Court of Criminal Appeals denies relief without written order, such ruling is an adjudication on the merits that is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Hill*, 210 F.3d at 486.

If there is no reasoned state-court decision on the merits, "the federal court 'must determine what arguments or theories . . . *could* have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.' " *Sexton v. Beaudreaux*, __ U.S. __, 138 S. Ct. 2555, 2558 (2018)(quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)) (emphasis added). If such a disagreement among jurists is possible, then Petitioner's claim must be denied. *Id.*

A reasoned state court opinion is not required to determine whether a state court's decision resulted from an unreasonable legal or factual conclusion. *Harrington*, 562 U.S. at 98. "Where a state

court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing that there was *no reasonable basis* for the state court to deny relief." *Id.* (emphasis added). This is so whether or not the state court decision reveals which of the elements (in a multi-part claim) it found insufficient. *Id.* Section 2254(d) applies when a "claim," not a component of one, has been adjudicated. *Id.*

Even where the state court does not cite applicable Supreme Court precedent or is unaware of the precedent, deference is required so long as neither the reasoning nor the result of the state court decision contradicts Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002)(*per curiam*). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. The standard was meant to be difficult to meet:

> § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.* at 102–03 (citations omitted).

In making its review, the Court is limited to the record that was before the state court. 28 U.S.C. § 2254(d)(2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**B. Ineffective Assistance of Counsel**

To prevail on an ineffective assistance of counsel claim, the petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Missouri v. Frye*, 566 U.S. 133, 147 (2012). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*,

466 U.S. at 697; *see also United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000)(*per curiam*). "The likelihood of a different result must be substantial, not just conceivable," *Harrington*, 562 U.S. at 112, and a petitioner must prove that counsel's errors "so *undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 686). Judicial scrutiny of this type of claim must be highly deferential and the petitioner must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Simply making conclusory allegations of deficient performance and prejudice is not sufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

## C. Rule 5 Statement

Respondent does not challenge Petitioner's application on successiveness or statute-of-limitations grounds. (ECF 13 at 6). However, Respondent asserts that Petitioner's following claims are unexhausted and procedurally barred: (1) sufficiency (factual and legal) challenges to the weight of the controlled substance; and (2) all IAC claims *except* trial counsel's failure to file a motion to suppress due to the "two-gram" discrepancy in the measured weight of the controlled substance, and trial counsel's failure to file a motion to suppress or object to Officer Bravo's testimony.

## VI.   <u>MERITS</u>

### A. Unexhausted and Procedurally Barred Claims

This Court may only consider Petitioner's properly exhausted claims. Petitioner raised four ground for relief in his state habeas application:

(1) "factual sufficiency of the evidence to support conviction," (2) "legal sufficiency of the evidence to support the intent to deliver," (3) "ineffectiveness of trial counsel for failure to file a Motion to Suppress evidence, due to 2.0 gram discrepancy," and (4) "ineffectiveness of trial counsel for failure to file a Motion to Suppress or object to officer Juan Bravo's testimony."

(ECF 12-20 at 8-15, 39). In the instant petition, Petitioner also challenges the legal sufficiency of the evidence concerning the weight of the methamphetamine. (ECF 3 at 7). Petitioner adds several IAC claims in addition to trial counsel's failure to file a motion to suppress concerning testimony and evidence regarding the weight of the methamphetamine and Officer Bravo's allegedly biased testimony about Petitioner's possession of the controlled substance.

Federal statute provides:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)(i)  there is an absence of available State corrective process; or

(ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

…

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The exhaustion doctrine set forth in section 2254 requires that the state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights in state cases. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). In order to satisfy the federal exhaustion requirement, a petitioner must fairly present to the **highest** state court **each** constitutional claim he wishes to assert in his federal habeas petition. *Skelton v. Whitley*, 950 F.2d 1037, 1041 (5th Cir.), *cert. denied sub nom. Skelton v. Smith*, 506 U.S. 833 (1992); *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982), *cert. denied*, 460 U.S. 1056 (1983). The TCCA in Austin, Texas is the highest court that has jurisdiction to review a petitioner's confinement. TEX. CODE CRIM. PROC. § 44.45 (2015). Claims may be presented to that court through an application for a writ of habeas corpus, or on direct appeal

by a petition for discretionary review. *See* TEX. CODE CRIM. PROC. art. 11.01 et seq. (2016); *see also* TEX. R. APP. P. 68.1 (2015).

It does not appear Petitioner has presented the following claims to the TCCA: (1) legal sufficiency of the evidence regarding the weight of the methamphetamine; (2) IAC claim for failure to conduct discovery, file pretrial motions, investigate defenses, or interview exculpatory witnesses; (3) IAC claim for failure to request independent forensic testing; (4) IAC claim for failure to challenge the intent to deliver prong of the indictment; and (5) IAC claim for failure to object to the testimony of Officer Parkhurst and Officer Garza. Instead, Petitioner appears to raise these claims for the first time in the instant federal habeas petition. Petitioner has failed to exhaust his state court remedies with regard to these claims.

Additionally, Petitioner's sufficiency of the evidence claim regarding weight was not raised on direct appeal. In Texas, a challenge to the sufficiency of the evidence is not cognizable on collateral review. *See Ex parte Easter*, 615 S.W.2d 719, 721 (Tex. Crim. App. 1981). The Fifth Circuit has recognized that a petitioner's claim of insufficiency of the evidence is barred by the doctrine of procedural default as the result of his failure to raise such a claim properly on direct appeal. *West v. Johnson*, 92 F.3d 1385, 1398 n.18 (5th Cir.1996) (recognizing the TCCA "has long held that the sufficiency of the evidence may only be raised on direct appeal, and may not be raised in state habeas") (citations omitted). The procedural default is adequately established even where, as here, the TCCA denied relief without stating a reason. *See id.*; *see also Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).

When a petitioner has failed to exhaust state court remedies with regard to a claim and the state court to which he would be required to present the unexhausted claim would find the claim procedurally barred, the federal procedural default doctrine precludes federal habeas corpus review of the claim. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *see Nobles v. Johnson*, 127 F.3d 409,

423 (5th Cir. 1997) (unexhausted claim that would be barred by the state abuse of the writ doctrine if raised in a successive state habeas petition was procedurally barred by federal procedural default doctrine). Any attempt by Petitioner to present these unexhausted IAC claims in a subsequent state habeas application would be dismissed by the TCCA as abusive unless petitioner were able to demonstrate the statutory equivalent of cause or actual innocence. TEX. CODE CRIM. PROC. art. 11.07 § 4 (2015).

Before this Court can consider the merits of Petitioner's unexhausted and procedurally defaulted claim, he must establish cause for his default and actual prejudice as a result of the alleged violation of federal law, or he must demonstrate that the Court's failure to consider his claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. A miscarriage in this context requires a showing that Petitioner is actually innocent of the offense of which he was convicted. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Smith v. Dixon*, 14 F.3d 956, 974 (5th Cir. 1994). Petitioner has not made the requisite showing of cause and prejudice. These grounds for relief should be denied.

### B. Factual Sufficiency

Petitioner challenges the factual sufficiency of the evidence to sustain his conviction. (ECF 3 at 7). A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected a petitioner's state trial. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). The Texas factual-sufficiency standard of review is based on state law. *See Clewis v. State*, 922 S.W.2d 126, 131–34 (Tex. Crim. App. 1996). A federal habeas court does not sit as a super state supreme court for review of issues decided by state courts on state law grounds. *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986). On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects

the federal constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *see also West*, 92 F.3d at 1394 (explaining that, "in challenges to state convictions under 28 U.S.C. § 2254, only *Jackson [v. Virginia]* need be satisfied, even if state law would impose a more demanding standard of proof") (quotation and citations omitted). Because a challenge to the factual sufficiency of the evidence does not implicate a constitutional issue, federal habeas corpus review is unavailable for Petitioner's claim that his conviction for possession of a controlled substance with intent to deliver is factually insufficient. Thus, this claim should be denied.

### C. Legal Sufficiency

Petitioner challenges the legal sufficiency of the evidence regarding his actual possession of the controlled substance and his intent to deliver the controlled substance. (ECF 3 at 7). Petitioner did previously raise this claim on direct appeal, and the COA found his claim was without merit. (ECF 12-12 at 1-7).

On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods*, 307 F.3d at 358. This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder but must consider all the evidence in the light most favorable to the verdict. *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).

Petitioner argues that it is impermissible to sustain his conviction for possession with intent to deliver because the evidence contained an "inference" within an "inference." (ECF 4 at 7-10). However, Petitioner does not clarify what inference within an inference was made. There was direct

testimony involving his possession of the controlled substance (Officer Bravo witnessed Petitioner

toss the drugs during a chase). The COA found sufficient evidence support the jury's verdict regarding

possession and intent to deliver:

> the State offered both direct and circumstantial evidence that Appellant possessed methamphetamine with the intent to deliver. Officer Juan Bravo testified Appellant fled from a traffic stop. Officer Bravo chased Appellant to a residential backyard where he observed Appellant remove two objects from his pocket and throw them nearby on the ground. One item was later identified as a glass pipe used to ingest drugs and the other, a large plastic baggie containing multiple smaller baggies that were "cornered."[] Both the pipe and the large plastic baggie were in the presence of law enforcement officers from the moment they were dropped until they were booked into evidence. Although Officer Matthew Garza did not observe Appellant drop the items, he corroborated their presence on the ground from the moment he arrived in the backyard only minutes after receiving a call over his radio. Officer Bravo also testified the two or three people in the adjacent yard were merely observers and were not having a party. A forensic scientist testified that four of the smaller baggies weighed 4.57 grams and the substance was methamphetamine. Appellant admitted to the presence of a baggie containing marijuana found in another pocket of his jeans by Officer Garza.

(ECF 12-12 at 5-6).

Further there was specific testimony by the police officers *and* the Petitioner that the drugs

recovered at the scene were "packaged for resale." (ECF 12-7 at 107-130). Officer Parkhurst testified

concerning the "cornered" baggies, as follows:

> A.    Okay.  This packaging is consistent with what we refer to as corners. Basically, where they go down -- drug dealers, people in the drug industry, will go down to a -- like a dollar store or Wal-Mart, wherever, and buy plastic baggies, sandwich baggies – they're the cheapest to buy -- and basically get two packages out of each sandwich baggie. They'll hold the baggie up, put whatever contraband they're selling into one corner. They cut that corner off, tie it off, usually with their hand, just fold it over and tie it off. And then they'll load the other corner and cut that corner off. And in law enforcement and narcotics enforcement, we've always -- we refer to that as corners, corner baggies.
>
> …
>
> The smaller baggies are indicative or indicators of that it's not personal use. These are for -- for resale.

(*See id*. at 110-111, 113). Petitioner testified concerning his prior knowledge of "corner" baggies used

for resale as follows:

Q.   You think that -- you know that is methamphetamine based on what you've heard today and your experience. You've seen it before, right?
A.   What I've heard -- what I've heard about it, yes.
Q.   But you've also seen it?
A.   Yes, but not like the way it is in there. When I seen it, it was in a powder form only.
Q.   Well, you've experimented with it, too, right?
A.   Yes.
Q.   So really -- really that's not an issue. I mean, you know that's methamphetamine, right?
A.   I guess. The technician says yes.
Q.   And you've seen it in these little corner baggies before, too, haven't you?
A.   Yes, I have.
Q.   Okay. And the way that's packaged -- the way it's packaged and when you have so many, that's packaged for resale, right?
A.   I guess so.

(ECF 12-7 at 130).

Intent to distribute may not be inferred solely from the possession of an amount of controlled substance too large to be used by the possessor alone. *See United States v. Prieto-Tejas*, 779 F.2d 1098, 1101 (5th Cir. 1986). Therefore, there must be some other evidence to determine whether, in conjunction with the quantity of drugs found, the requisite intent to distribute can be established. *See United States v. Munoz*, 957 F.2d 171, 174 (5th Cir. 1992). Here, the COA determined that the testimony concerning the packaging of the drugs (the "cornered" baggies), combined with the amount of the drugs found, and Petitioner's own testimony, was sufficient evidence to establish an intent to deliver. (ECF 12-12 at 5-7).

Based on its own review of the record, this Court concludes that a rational trier of fact could have found the essential elements of the offense charged – possession and intent – beyond a reasonable doubt by crediting the testimony of Officer Bravo, Officer Parkhurst, Officer Garza, and even the Petitioner's testimony at trial. Petitioner's habeas arguments (that the amount of the drugs and presence of drug paraphernalia could indicate personal use, that Officer Bravo's biased testimony is the "only" proof of possession, and that Pena's known status was as a drug "user" not a dealer) (*See* ECF 3 at 6-7) ask this Court to re-weigh the evidence and decide if the jury's credit given to the

testimony is correct; however, this type of inquiry is "beyond the scope of review" permitted under the *Jackson* standard. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). Thus, Petitioner's claim regarding the legal sufficiency of the evidence must be denied.

### D. Exhausted Ineffective Assistance of Counsel Claims

Petitioner challenges the effectiveness of his trial counsel due to counsel's failure to file a motion to suppress to challenge the testimony by the DPS lab technician concerning the weight of the controlled substance and the testimony of Officer Bravo, as well as his failure to make objections to this testimony.[3] (ECF 3 at 7; ECF 4 at 7-10).

*Failure to File Motion to Suppress*

Petitioner has failed to demonstrate that the TCCA's decision that he was not denied the effective assistance of counsel was contrary to or involved an unreasonable application of *Strickland*, because Petitioner has not shown that his attorney's strategic decision not to file a motion to suppress was objectively unreasonable. *See Strickland*, 466 U.S. at 687–88. "A petitioner shoulders a heavy burden to refute the premise that 'an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance.' " *Boyle v. Lumpkin*, No. 4:20-CV-190-A, 2021 WL 1338856, at *10 (N.D. Tex. Apr. 9, 2021) (quoting *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)); *see Strickland*, 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of IAC); *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."). Petitioner has

---

[3] As discussed previously, these are the only IAC claims that Petitioner raised in his state habeas petition. *See infra*, Section IV.A.

failed to prove that his attorney made an error "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *See Strickland*, 466 U.S. at 687.

Second, a petitioner must show his attorney's substandard performance prejudiced him. *See Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id*. at 112. An inquiry into counsel's performance is unnecessary if a petitioner fails to show prejudice. *See Strickland*, 466 U.S. at 697.

Here, Petitioner cannot show he was prejudiced by counsel's failure to file a motion to suppress because he has not shown the motion had merit. *Collier v. Dir., TDCJ-CID*, No. 3:18-CV-02208-C (BT), 2021 WL 1739249, at *9 (N.D. Tex. Apr. 7, 2021), *report and recommendation adopted*, No. 3:18-CV-2208-C-BT, 2021 WL 1734784 (N.D. Tex. May 3, 2021) (citing *Roberson v. State*, 852 S.W.2d 508, 510-12 (Tex. Crim. App. 1993) (unless there is a showing that a motion had merit and that a ruling on the motion would have changed the outcome of the case, counsel will not be ineffective for failing to assert the motion). Here, Petitioner cites to no authority that the testimony concerning the weight of the controlled substance, as measured and weighed by a lab technician, was inadmissible or subject to suppression. Additionally, counsel did bring this weight discrepancy to the attention of the jury during his cross-examination of Officer Bravo. (ECF 12-7 at 72-73).

Petitioner has not cited to any authority that the direct testimony of Officer Bravo was subject to suppression based solely on alleged bias, although bias can be challenged during cross-examination. As noted by trial counsel's affidavit, trial counsel did not pursue a motion to suppress that had no legal basis as a trial strategy in order to best represent the Petitioner and save face with the trial judge. (ECF 12-20 at 31-33). Thus, Petitioner's IAC claim for failure to file a motion to suppress this admissible testimony should be denied.

### Failure to Object: Officer Bravo's Testimony

Petitioner's IAC claim concerning the failure to object to Officer Bravo's eye-witness testimony concerning his possession of drugs or to challenge Officer Bravo's bias on cross-examination, is meritless. "Mere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). Without evidence in the record, Petitioner's bald assertions as to the conduct of his attorneys are not of any probative evidentiary value. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Further, Petitioner testified concerning his prior interactions with Officer Bravo as follows:

> Q.    And really Officer Bravo -- you didn't really know Officer Bravo, and he didn't really know you before this incident?
>
> A.    Yes, sir.

(ECF 12-7 at 129). There is no evidence in the record that Officer Bravo had prior interactions with the Petitioner such that he deliberately "set up" the Petitioner. Petitioner, in his own application, fails to indicate the existence of any evidence that would support his claims, and also failed to provide the state habeas court with any information that would support a need for further questioning of Officer Bravo along these lines. Further, trial counsel indicated his refusal to engage in this line of questioning was trial strategy, and there is no basis to question that strategy before the Court. (ECF 12-20 at 31-33). Thus, this claim should be dismissed as meritless.

## VII.    RECOMMENDATION

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge

to the United States District Judge that the petition for a writ of habeas corpus filed by Petitioner

Michael Anthony Pena be DENIED.

## VIII.    INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED July 2, 2021.


_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE


## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).